**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KENNETH and ROSE MANN, et al.,

Plaintiffs,

v.

PALMERTON AREA SCHOOL DISTRICT, et al.,

Defendants.

CIVIL ACTION NO. 3:14-cv-68

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is a Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 29) filed by Defendants Palmerton Area School District, Palmerton Area School District School Board, and Palmerton Area High School (collectively, "District Defendants"); football coaches Christopher Walkowiak, Travis Fink, Pat Morgans, Mike Falcone, Will Kunkle, Avery Weber, and Ryan McGrath, (collectively, "coaches"); athletic director/coordinator Andrew Remsing; and Palmerton School District School Board directors Michael Ballard, Carl Bieling, Susan Debski, Carol Dwyer, Stuart Henritzy, Charles Myers, Barry Scherer, Christina Snyder, and Darlene Yeakel (collectively "board members"). For the reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

**I. Background**

The facts as set forth in the Amended Complaint (*Am. Compl*., Doc. 27) are as follows:

Plaintiff Sheldon Mann ("Sheldon") is an incapacitated person born on January 18, 1994. (*Id.* at ¶ 4.) His parents, Kenneth and Rose man were appointed co-plenary guardians of the estate of Sheldon Mann on January 13, 2014. (*Id.* at ¶ 7.) Sheldon was

a student at Palmerton Area High School and participated in the school's football program beginning in July of 2008. (*Id.* at ¶¶ 38-39.) Defendant Walkowaik was the head coach of the football team, and Defendants Fink, Morgans, Falcone, Kunkle, Weber, and McGrath were assistant coaches. (*Id.* at ¶¶ 41-42.)

On November 1, 2014, Sheldon was participating in football practice at Palmerton Area High School. (*Id.* at ¶ 45.) During practice, he was hit by a teammate running full speed towards him and the coaching staff came onto the filed to attend to Sheldon's injury. (*Id.* at ¶¶ 46-47.) After the hit, Sheldon reported feelings of numbness and/or disorientation to the coaching staff, and Sheldon's behavior was erratic. (*Id.* at ¶¶ 48-49.) Immediately after the incident, the coaches told Sheldon to continue to play in the practice, failing to perform a medical evaluation or concussion testing or to send him to the athletic trainer. (*Id.* at ¶¶ 50-53.) The coaches also failed to notify Sheldon's parents of this injury. (*Id.* at ¶ 54.)

Later on during the same football practice, Sheldon was hit for a second time by a teammate running at full speed. (*Id.* at ¶ 58.) After the second hit, Sheldon was confused, dazed, unable to continue practice, and he experienced physical manifestations of his injury like dry heaving. (*Id.* at ¶¶ 58-59.) Football practiced concluded shortly thereafter. (*Id.* at ¶ 61.) Based on the observations of others, Sheldon's behavior was erratic, and he was taken to the school's trainer thereafter. (*Id.* at ¶¶ 62-63.)

After practice, Sheldon could not provide complete information to the trainer regarding the two hits he sustained, and the trainer was not informed on that date that Sheldon had been involved in two collisions. (*Id.* at ¶¶ 65-66.)

Defendants did not have a proper policy and/or procedure in place to instruct student athletes on the causes, hazards, symptoms, and dangers of traumatic brain injuries and despite Sheldon's physical manifestations and his complaints after his first hit, at no time

did Defendants ensure that Sheldon was medically cleared to return to practice. (*Id.* at ¶¶ 72-73.) Defendants failed to enforce and/or enact proper and adequate policies for head injuries resulting from athletic activities. (*Id.* at ¶ 74.) These failures of Defendants were a normal practice, custom, or policy. (*Id.* at ¶ 78.)

Upon the filing of the Amended Complaint, Sheldon continues to suffer from serious and permanent effects of his traumatic brain injury including: second impact syndrome, slowed motor activity, altered sleep patters, auditory hallucinations, recurrent headaches and head pain, nausea, dizziness, balance problems, nihilistic delusions, impaired concentration, poor short-term memory, hypersensitivity to light, sounds, and smells, social isolation, difficulty following conversations, episodic aggressive behaviors, impaired peripheral vision, seizure activity, impaired logical reasoning, impaired common sense reasoning, and overall moderate brain dysfunction suggestive of bilateral diffuse axonal injury secondary to a traumatic brain injury. (*Id.* at ¶¶ 79, 82.)

Based on the foregoing, Kenneth and Rose Mann, as parents and co-plenary guardians of the estate of Sheldon Mann commenced the instant action on January 15, 2014 (Doc. 1). On April 14, 2014, Plaintiffs filed an Amended Complaint (Doc. 27). Counts I and II of the Amended Complaint assert Fourteenth Amendment due process claims "for injury as a result of a state created danger" and "injury to human dignity and bodily integrity," respectively. (*Am. Compl.* Counts I and II.) Count III asserts a violation of the Constitution of the Commonwealth of Pennsylvania under Article I, Section I for injury to bodily integrity. *Id.* at Count III.

Defendants filed a motion to dismiss the Amended Complaint in its entirety on April 24, 2014 (Doc. 29). Defendants' brief in support of its motion was filed on May 8, 2014 (Doc. 30). Plaintiffs filed their brief in opposition to the motion to dismiss (Doc. 31) on May 22, 2014. On June 4, 2014, Defendants filed a reply brief (Doc. 32). Defendants' motion

to dismiss is now fully briefed and ripe for disposition.

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id*. A defendant bears the burden of establishing that a plaintiffs complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiffs claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power*

*Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir.1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## III. Discussion

### A. Fourteenth Amendment Claims

Defendants' motion to dismiss raises two main arguments with respect to Plaintiffs' Fourteenth Amendment claims in Counts I and II of the Amended Complaint. They assert that Plaintiffs have failed to state a claim under the state created danger theory. They also argue that Plaintiffs have failed to state a cause of action under the Fourteenth Amendment regarding municipal liability. These arguments will be addressed below, in turn.

#### 1. State Created Danger Theory

Defendants assert that the Amended Complaint fails to state a cause of action under the state created danger theory. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but a method for vindicating federal rights secured by the United States Constitution or federal statutes. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir.2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir.1998)).

Generally, the due process clause of the Fourteenth Amendment does not impose an affirmative duty on the state to protect its citizens from harms caused by other private citizens. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Svcs.*, 489 U.S. 189, 195–96, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). However, "[a]n exception to this general rule exists that is known as the 'state-created danger' theory. The state-created danger theory can be 'utilized to find a constitutional tort duty under § 1983 outside of a strictly custodial context[.]'" *Moeck v. Pleasant Valley Sch. Dist.*, 983 F. Supp. 2d 516, 526 (M.D. Pa. 2013) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.,* 972 F.2d 1364, 1373 (3d Cir.1992)).

To prevail on a state created danger claim, a Plaintiff must establish the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006) (citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir.2006)).

As to the first prong, Defendants argue that Plaintiffs fail to allege that the harm ultimately caused was foreseeable and fairly direct. The Third Circuit explained in *Phillips v. County of Allegheny* that "[t]o adequately plead foreseeability . . . , we require a plaintiff to allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." 515 F.3d 224, 238 (3d Cir. 2008). In the Amended Complaint, Plaintiffs

allege that "Defendants knew, or should have known, that traumatic brain injuries, including but not limited to concussions, was [sic] a common hazard associated with football activities." (*Am. Compl.* ¶ 67.) Plaintiffs further alleged that "Defendants knew or should have known that allowing student athletes to continue to participate in athletic activities after experiencing concussion and/or traumatic brain injury symptoms posed a significant risk of serious bodily injury." *Id.* at ¶ 68. As to the requirement that the harm caused was "fairly direct," Plaintiffs assert that the harm suffered by Sheldon was a direct result of Defendants' acts in that he suffered his second concussion after being placed back into practice by the coaches. Specifically, Plaintiffs allege that "immediately following" the first hit, "the coaches told Sheldon to continue to play in the practice." *Id.* at ¶ 50. In light of the foregoing, Plaintiff have sufficiently stated facts that could satisfy the first prong of the state created danger test.

As to the second prong, that the state actor acted with a degree of culpability that shocks the conscience, Plaintiffs point out that "[t]he time in which the government actors had to respond to an incident is of particular significance." *Phillips v. County of Allegheny*, 515 F.3d 224, 240 (3d Cir. 2008). More specifically, there is an inverse relationship between the level of culpability required to shock the conscience and the time state actors have to deliberate, such that "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006). "In a 'hyperpressurized environment,' an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient." *Id.* The Third Circuit also noted "the possibility that deliberate indifference might exist without actual knowledge of a risk of harm when the risk is so obvious that it should be known." *Id.* Moreover, in situations " involving something less urgent than a 'split-second' decision but

more urgent than an 'unhurried judgment'" the relevant inquiry is whether the state actor "consciously disregarded a great risk of harm," with the possibility that "actual knowledge of the risk may not be necessary where the risk is 'obvious.'" *Id.* at 309.

Defendants argue that Plaintiffs have failed to plead facts to establish that "Defendants acted in wilful disregard for the safety of the plaintiffs." (Doc. 30, 8.) Defendants rely on *Yatsko v. Berezwick*, a case in which the plaintiff, a high school student, sustained a head injury when she leapt for a rebound and collided with another player, to support their position. No. 3:06-cv-2480, 2008 WL 2444503, at *1 (M.D. Pa. June 13, 2008). In *Yatsko*, the court held that where "the failures of the teachers were ones of omission," specifically that "they did not prohibit plaintiff from playing in a basketball game after she injured herself," such action " does not constitute the sort of egregious behavior that rises to the level of a substantive due process violation." *Id.* at *6. The instant case differs from *Yatsko* in that Plaintiffs pled more than failures of omission on part of the coaches; Plaintiffs alleged that the coaches told Sheldon to continue participating practice after he sustained his first hit. Therefore, the court's conclusion in *Yatsko* on the second element of the state created danger theory is not persuasive in this case.

On the other hand, Plaintiffs rely heavily on *Alt v. Shirey*, a case in which a high school football player experienced a traumatic brain injury as the result of numerous collisions and being placed back in play on numerous occasions. No. 11-0468, 2012 WL 726579 (W.D. Pa. Feb. 7, 2012) *adopted by Alt v. Shirey*, No. 11-468, 2012 726593, at *2 (W.D. Pa. Mar. 1, 2012). In *Alt*, the court noted that factual allegations that plaintiff "sustained substantial hits to the head . . . in the open view of trainers and coaches," that "Defendants were then alerted to the fact that Plaintiff and other team members could sustain serious head injuries during the course of play," and that plaintiff subsequently sustained a serious head injury, "if proved, would show that these Defendants were

deliberately indifferent, thereby establishing a level of culpability that was conscience-shocking." *Id.* at *12.

In the present case, at this stage, Plaintiffs have sufficiently stated facts that could establish that Defendants acted with a degree of culpability that shocks the conscience. By observing Sheldon getting hit on the field and subsequently exhibiting symptoms of a head injury, by instructing him to continue to practice, and by stating that Defendants were or should have been aware of the risk of continuing to play football with a head injury, Plaintiffs have stated facts that could satisfy the second element of the state created danger theory.

Defendants do not challenge that Plaintiffs meet the third factor, that a relationship between the state and the plaintiff existed such that Sheldon was a foreseeable victim of Defendants' acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general.[1] Plaintiffs further assert that Sheldon was a foreseeable victim of Defendants' actions since he was ordered by the coaching staff to re-enter practice after sustaining a concussion.

As to the final requirement of the state created danger theory, that a state actor

---

1 Defendants do assert that Plaintiffs' allegation that "a relationship between Defendants and Plaintiff existed such that Plaintiff was a foreseeable victim of the defendant's acts and was a member of a discrete class of persons subjected to the potential harm brought about by Defendants actions" (*Am. Compl.* ¶ 85) fails to satisfy the "special relationship" theory. *See, e.g. Gardner v. Luzerne County*, 645 F. Supp. 2d 325, 333 (M.D. Pa. 2009) ("[O]ur Court of Appeals has framed two situations w[h]ere states have a constitutional duty to protect a citizen—the existence of a special relationship between the state and the victim and a state-created danger to the victim."). Because Plaintiffs do not appear to proceed under the "special relationship" theory and do state a claim under the state created danger theory, the Court refrains from addressing this argument at the present time.

affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all, Defendants assert that Plaintiffs failed to sufficiently plead affirmative conduct. (Doc. 30, 9.) Specifically, Defendants argue that Plaintiff's allegations "that Defendants violated Sheldon's constitutional rights to liberty and bodily integrity by allowing him to participate in practice after suffering an injury resulting in numbness and/or disorientation . . . cannot rise to the level of a constitutional violation." *Id.* at 11. To support their position, Defendants rely on *Leonard v. Owen J. Roberts School Dist.*, CIV.A. 08-2016, 2009 WL 603160 (E.D. Pa. Mar. 5, 2009), a case in which a student athlete was severely injured by a javelin at a track practice. In *Leonard,* the plaintiffs argued that the School District defendants failed "to take appropriate steps to address and monitor potentially unsafe athletic activities" that put the plaintiff "in a foreseeable, dangerous position." *Id.* at *7. There, the court held, based on this allegation, that the plaintiff failed to establish the final element of the state created danger test. *Id.* Unlike *Leonard*, in the present case Plaintiffs alleged that following Sheldon's first hit, "the coaches told Sheldon to continue to play in the practice." *(Am. Compl.* ¶ 50). Plaintiffs further allege that the coaches "personally observed Sheldon's disoriented disposition yet acted in deliberate indifference to his health, safety and welfare by placing him back into practice." *Id.* at ¶ 57. In addition, Plaintiffs allege that the "decisions made by the coaching staff increased the severity of [Sheldon's] signs and symptoms, and/or exposed him to future injuries including but not limited to second impact syndrome and/or other cognitive injury." *Id.* at ¶ 56. Therefore, Plaintiffs have stated facts sufficient facts to survive Defendants' motion to dismiss with respect to the final prong of the state created danger test.

Because Plaintiffs have sufficiently stated facts, that could satisfy each element of the state created danger theory, Defendants' motion to dismiss on this ground will be

denied.

**2. Municipal Liability**

To hold the municipal Defendants liable under the state-created danger theory, "Plaintiff[s] would need to show that [they] maintained an official policy or custom that resulted in the deprivation of [their] constitutional rights pursuant to the standards set forth by the Supreme Court in the seminal case of *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)." *K.S.S. v. Montgomery County Bd. Of Com'rs*, 871 F. Supp. 2d 389, 403 (E.D. Pa. 2012). Defendants argue that Plaintiffs have failed to plead a cognizable claim for municipal liability for a violation of Fourteenth Amendment rights.

Municipal employers, such as school districts,[2] cannot be held vicariously liable for the constitutional violations committed by their employees. *Monell v. NYC Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Instead, "[m]unicipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." *Moeck v. Plesant Valley School Dist.*, 983 F. Supp.2d 516, 524 (M.D. Pa. 2013) (citing *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir.2007).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996). In addition, a "policy may be established . . . [by] a municipality's failure to train its employees." *Moeck*, 983 F. Supp. 2d

[2] Following *Monell*, courts have recognized that the word "person" in § 1983 "includes municipalities and other local governing bodies such as school districts." *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *see also McGreevy v. Stroup*, 413 F.3d 359, 367–69 (3d Cir.2005) (school district may be liable under *Monell* ).

at 524 (*citing Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Monell*, 436 U.S. at 691-92.

In the Amended Complaint, Plaintiffs assert that "deliberate indifference to the health, safety and welfare of their student athletes in failing to medically clear said student athletes" and "in failing to enforce and/or enact proper and adequate policies for head injuries resulting from athletic activities was the common policy or custom of Defendants." (*Am. Compl.* ¶¶ 76-77.) The Amended Complaint further states that the Defendants' "actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to Sheldon's overall health" and that "the unlawful actions of the coaches were accepted, adopte[d], and/or ratified by final policy makers for Defendants and thus constitute policies, practices, customs and usages sufficient to impose municipal liability." *Id.* at ¶¶ 98, 112.

Once a plaintiff identifies a municipal policy or custom, "he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Where the policy does not facially violate the Constitution, "causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id.* (citations omitted). As the Third Circuit explained in *Berg*, "[f]ailure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." *Id.* (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197,

103 L. Ed. 2d 412 (1989)). However, if no pattern of violations exists, "the plaintiff bears a high burden to establish deliberate indifference. He must demonstrate that the violation of federal rights was a highly predictable consequence of the municipality's failure to train its employees regarding how to handle recurring situations." *Moeck v. Pleasant Valley School Dist.*, 983 F.Supp.2d 516, 524 (M.D. Pa. 2013) (citing *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)). "The fact that a situation is likely to recur and the predictability that a municipal employee will violate federal rights without adequate training can reflect deliberate indifference." *Id.*

As noted above, Plaintiffs assert that failure to medically clear student athletes and failure to enforce and/or enact proper and adequate policies for head injuries resulting from athletic activities was the common policy or custom of Defendants. (*Am. Compl.* ¶¶ 76-77.) Defendants argue that the Amended Complaint fails to provide factual averments to support these allegations. However, the Amended Complaint states that "defendants acted with deliberate indifference to Sheldon's constitutional rights . . . by": "failing to train coaches on safety protocol and indicators of a concussion or other head injury"; "failing to have proper procedures in place to treat head injuries and concussions"; and "failing to instruct student athletes . . . on the causes, symptoms and dangers of traumatic brain injuries." (*Am. Compl.* ¶ 111(d),(f), and (l).)

To support their claim for municipal liability, Plaintiffs rely heavily on *Alt v. Shirey*, wherein the court found that the allegations of the School District defendant's "failure to recognize and educate their student athletes concerning the causes, symptoms and dangers of traumatic head injuries" sufficiently alleged a common custom or practice of "ignoring the consequences of head injuries," which was bolstered by allegations that the plaintiff's injuries "occurred in open view of coaches and trainers." 2012 WL 726579, at *16.

Although, unlike the plaintiff in *Alt*, Sheldon was only ordered to continue to practice after enduring a head-on collision on one occasion, Plaintiffs have pled facts sufficient to state a claim of municipal liability. Plaintiffs have sufficiently alleged that Defendants had a policy or custom of failing to medically clear student athletes and failing to enforce and/or enact proper and adequate policies for head injuries. In addition, they adequately allege that failure to train the coaches on proper procedures and a safety protocol amounts to deliberate indifference to recurring head injuries, a common hazard associated with football. Therefore, the portion of Defendants' motion to dismiss attacking municipal liability will be denied.

**B. Qualified Immunity**

Defendants assert that the individual Defendants are entitled to qualified immunity. (Doc. 30, 16.) State actors sued in their individual capacity under § 1983 are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The doctrine of "qualified immunity . . . 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Blackhawk v. Pennsylvania*, 381 F.3d 202, 215 (3d Cir. 2004) (internal citation omitted)). In determining whether a defendant is entitled to qualified immunity, a court considers whether the official's acts violated a constitutional or statutory right and (if so) whether that right was clearly established at the time of the violation. *See Yarris v. County of Del.*, 465 F.3d 129, 140–41 (3d Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565.

Here, the Court has determined that Plaintiffs have alleged claims for a constitutional violation. However, the question remains as to whether a constitutional violation in fact occurred. While "it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" Phillips, 515 F.3d at 242 n. 7 (citing *Curley v. Klem*, 298 F.3d 271, 277–78 (3d Cir. 2002)). Therefore, Defendants' present application for qualified immunity is premature, although they remain free to raise the argument again at a later stage.

**C. Claims of Kenneth and Rose Mann**

Defendants' assert that any claims asserted by Sheldon's parents, Kenneth and Rose Mann, must be dismissed because they do not allege that they have suffered injuries, or that they possessed a constitutional right that was violated. (Doc. 30, 15.) Plaintiffs assert that Kenneth and Rose Mann are not pursuing individual claims but only claims in their capacity as co-plenary guardians of Sheldon Mann's Estate. (Doc. 31, 21.) Therefore, Defendant's motion to dismiss on this ground will denied as moot.

**D. State Constitutional Claim**

Defendants argue that Count III of Plaintiff's Second Amended Complaint containing a claim for violation of Plaintiff's rights under the Pennsylvania Constitution, Article I, Section 1 should be dismissed. Defendants assert that there is no private cause of action under the Pennsylvania statutory authority or appellate case law for violation of civil rights under the Pennsylvania Constitution. *See, e.g. Pollarine v. Boyer*, CIV.A.04-CV-5312, 2005 WL 1806481, at *2 (E.D. Pa. July 29, 2005)("The Pennsylvania Constitution does not confer a private right of action on an individual who seeks to recover damages from a defendant."). In response, Plaintiffs merely state that "'[T]he Pennsylvania Supreme Court

has held that the requirements of Article I, Section 1, of the Pennsylvania Constitution are not distinguishable from the Due Process Clause of the [Fourteenth] Amendment of the United States Constitution, and this Court must apply the same analysis to both claims.'" *Alt*, 2012 WL 726579, at *20. However, they have failed to address Defendants argument that "Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private cause of action for a federal constitutional violation." (Doc. 32, 10). Because Plaintiffs have effectively failed to oppose Defendants' argument regarding this ,their Pennsylvania constitutional claim will be dismissed. *See, e.g. Morrell v. Chichester School Dist.*, No. 04-2049, 2004 WL 1836997, at *4 (E.D. Pa. Aug. 17, 2004) ("Because the plaintiffs have failed to oppose the defendants' argument on this claim or give the Court guidance regarding the intended claim, the plaintiffs' Pennsylvania constitutional claim is dismissed with prejudice.").

## IV. Conclusion

For the reasons stated above Defendants' motion to dismiss will be granted in part and denied in part. The motion will be granted with respect to Count III of the Amended Complaint, alleging violations of the Constitution of the Commonwealth of Pennsylvania. This claim will be dismissed with prejudice. The motion as to individual claims of Kenneth and Rose Mann will be denied as moot. Defendants' motion to dismiss will be denied in all other respects.

An appropriate order follows.

July 17, 2014
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge